2022 IL App (1st) 210105

FIRST DISTRICT
FIRST DIVISION
March 21, 2022

No. 1-21-0105

| | | |
|---|---|---|
| JAEWOOK LEE, d/b/a Evanston Grill, Individually and on Behalf of a Class of Similarly Situated Individuals, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | No. 20 CH 04589 |
| v. | ) ) | Honorable Allen Price Walker, |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | Judge Presiding. |
| Defendant-Appellee. | ) ) | |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Walker concurred in the judgment and opinion.

## OPINION

¶ 1    As a result of the business closure orders due to the coronavirus disease 2019 (COVID-19), many businesses across the country filed claims for business interruption coverage with their insurance carriers, which were denied. In fact, "[a]s of the week ending June 28, 2021, a total of 1,937 business interruption lawsuits ha[d] been filed."[1] This is one such lawsuit.

¶ 2    In this insurance coverage dispute, plaintiff Jaewook Lee, d/b/a Evanston Grill (Evanston Grill), individually and on behalf of similarly situated individuals, appeals the dismissal of its complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)), seeking a declaratory judgment that its business interruption claim was a "covered cause of loss" under the businessowners policy issued by defendant State Farm Fire and Casualty

[1]Information provided by the Restaurant Law Center and Illinois Restaurant Association *amici curiae* brief (citing University of Pennsylvania Carey Law School, Insurance Law Center, Covid Coverage Litigation Tracker, https://cclt.law.upenn.edu/cclt-case-list (last visited July 13, 2021)).

Company (State Farm). Evanston Grill also seeks reversal of the circuit court's dismissal of its breach of contract count and bad faith denial of insurance in violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2020)) count, both stemming from the same denial of coverage. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Hyun Lee and his father, Jaewook Lee, owned and operated Evanston Grill, which is a restaurant located in Evanston, Illinois. State Farm is an insurance company engaged in the business of insuring properties and "is authorized to write, sell, and issue insurance policies providing property and business income coverage." State Farm sold and issued "property coverage to Evanston Grill" (policy No. 93-KH-H688-5) for the policy period of August 15, 2019, to August 15, 2020 (policy).

¶ 5        On March 16, 2020, Illinois Governor J. B. Pritzker issued Executive Order 2020-07 in response to "the ongoing spread of COVID-19 and the danger the virus poses to the public's health and wellness," ordering that "Beginning March 16, 2020 at 9 p.m. through March 30, 2020, all businesses in the State of Illinois that offer food or beverages for on-premises consumption– including restaurants, bars, grocery stores, and food halls—must suspend service for and may not permit on-premises consumption." Exec. Order No. 2020-07, 44 Ill. Reg. 5536 (Mar. 16, 2020), https://www2.illinois.gov/Documents/ExecOrders/2020/ExecutiveOrder-2020-07.pdf [https://perma.cc/6AQN-FBAS]. On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, directing that "Non-essential business and operations must cease" and "all individuals *** are ordered to stay at home or at their place of residence except as allowed in this Executive Order." (Emphasis omitted.) Exec. Order No. 2020-10, 44 Ill. Reg. 5857 (Mar. 20, 2020), https://www2.illinois.gov/Documents/ExecOrders/2020/ExecutiveOrder-2020-10.pdf

[https://perma.cc/3GXY-UM64].

¶ 6    Evanston Grill complied with the executive orders (hereinafter referred to collectively as the "closure orders") but "suffered business income losses and incurred extra expense" from the business interruption. Evanston Grill claimed that it "suffered a loss of revenue in excess of $100,000 in the month of April 2020, as compared to April 2019—a decrease attributable to the Closure Orders." Therefore, Evanston Grill submitted a claim to State Farm requesting coverage for the "business interruption losses." State Farm denied the claim the same day, finding no "covered cause of loss" because "there was no accidental direct physical loss to Covered Property to trigger coverage." State Farm also asserted that "the policy specifically exclude[d] loss caused by enforcement of ordinance or law, virus, consequential losses, and acts or decisions."

¶ 7    The "Loss of Income and Extra Expense" endorsement (Form CMP-4705) to the "Businessowners Coverage Form," which Evanston Grill filed its claim under, states in relevant part:

"The coverage provided by this endorsement is subject to the provisions of SECTION I-PROPERTY, except as provided below.

COVERAGES

1. Loss of Income

a. We will pay for the actual 'Loss of Income' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause of Loss. ***."

"Section I—Covered Causes of Loss" (standard form CMP 4100) states "[w]e insure for accidental direct physical loss to Covered Property unless the loss is: 1. Excluded in Section I–Exclusions;

3

or 2. Limited in the Property Subject to Limitations provision." Under the policy's "exclusions," State Farm does "not insure under any coverage for any loss" because of any "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease."

¶ 8        Following State Farm's denial of coverage, Evanston Grill filed a three-count complaint, including one count for a declaratory judgment that the "past and future business income loss(es) and extra expense from the closure orders" were "covered losses" under the policy, one count for breach of contract relating to the denial of coverage, and one count for the bad faith denial of coverage.

¶ 9        State Farm moved to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), arguing that "the clear language of the policy and its endorsement" "requires 'accidental direct physical loss to' Covered Property," but Evanston Grill's "alleged loss is an economic loss, not a physical injury to covered property." State Farm also argued that the "presence or suspected presence of a virus" did not constitute an " 'accidental direct physical loss to' Covered Property."

¶ 10       The circuit court dismissed Evanston Grill's complaint with prejudice under section 2-615 of the Code (*id.*), finding that Evanston Grill's "alleged economic losses do not constitute 'accidental direct physical loss to' Covered Property." The circuit court noted that its "inquiry need not proceed any further," but found "that even if Plaintiffs had met their initial burden, their claims would not succeed under the Virus Exclusion of the Policy." The circuit court also dismissed the breach of contract and bad-faith denial of coverage counts on the basis that coverage under the policy was not triggered.

¶ 11       The Restaurant Law Center and Illinois Restaurant Association filed amici curiae brief in support of reversing the circuit court's dismissal of Evanston Grill's complaint, and American Property Casualty Insurance Association and National Association of Mutual Insurance

Companies filed amici curiae brief in support of affirming dismissal of the complaint.

¶ 12                                    II. ANALYSIS

¶ 13        Evanston Grill claims that the circuit court erred in dismissing its complaint with prejudice, arguing that the "loss of use of its property is a direct physical loss to covered property" because the closure orders "physically prohibited customers from entering" the property. Evanston Grill also argues that its "all-risk" insurance policy[2] is "intended to provide broad protection," and "[a]n average, ordinary, and reasonable person would interpret the meaning of 'direct physical loss of *** covered property' to include the sudden inability to use property that was previously usable."

¶ 14        A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint by alleging defects apparent on the face of the complaint. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47. The critical inquiry raised by a section 2-615 motion to dismiss is "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. All well-pleaded facts in the complaint are accepted as true, as well as any reasonable inferences arising from those facts. *Id.* A section 2-615 motion to dismiss should not be granted "unless it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* We review a section 2-615 dismissal *de novo. Id.*

¶ 15        In this case, we must interpret the policy's plain and ordinary language to determine whether Evanston Grill's business interruption claim triggered coverage under the policy as a "covered cause of loss." Although the phrase "covered cause of loss" is defined in the policy to include a "direct physical loss" to covered property unless the loss is "excluded," the term

---

[2]"As a rule, recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud." *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill. App. 3d 651, 664 (1986).

"physical loss" is undefined. The "rules applicable to contract interpretation govern the interpretation of an insurance policy." *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, ¶ 19. The primary objective of the court "when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* "Undefined terms will be given their plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person." *Id.* The interpretation of an insurance policy's language raises a question of law subject to *de novo* review. *Phusion Projects, Inc. v. Selective Insurance Co. of South Carolina*, 2015 IL App (1st) 150172, ¶ 40.

¶ 16     Although this court and our supreme court have not yet addressed the COVID-19 business interruption coverage issue raised here, the parties cite numerous decisions of other state and federal courts addressing this issue. In fact, "an avalanche of insurance claims has followed in the wake of the pandemic, as the suffering businesses look for assistance in absorbing those losses." *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327, 329 (7th Cir. 2021). While not binding on this court, we are persuaded by and agree with the conclusions reached in *Sandy Point Dental, P.C.*, which interpreted the same policy language of " 'direct physical loss' to covered property." *Id.*; see *Colagrossi v. Royal Bank of Scotland*, 2016 IL App (1st) 142216, ¶ 57 (federal decisions may be considered as persuasive authority).

¶ 17     In *Sandy Point Dental, P.C.*, three businesses, like Evanston Grill, were "required to close or dramatically scale back [their] operations in response to a series of executive orders issued by Illinois Governor J. B. Pritzker in an effort to curb the spread of the virus in the state." *Sandy Point Dental, P.C.*, 20 F.4th at 329. The businesses procured insurance providing "coverage for income losses sustained on account of a suspension of operations caused by 'direct physical loss' to covered property." *Id.* The businesses all had policies with the same insurer and submitted claims

for lost business income to the insurance company, which denied coverage and litigation followed. *Id.*

¶ 18    The *Sandy Point Dental, P.C.* court stated that for the businesses to survive a Federal Rule of Civil Procedure, Rule 12(b)(6) (Fed. R. Civ. P. 12(b)(6)) motion to dismiss for failure to state a claim upon which relief could be granted, "they needed to allege that either the virus or the resulting closure orders caused direct physical loss or direct physical damage to covered property." *Sandy Point Dental, P.C.*, 20 F.4th at 329, 331. The parties agreed that Illinois law applied, and the court stated that its "task [was] to predict how the Supreme Court of Illinois would resolve the issue." *Id.* at 331. Noting that "[n]o decision of the Illinois Supreme Court has addressed the precise policy language before [it]," the court determined that it was "not entirely without guidance" and looked to *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278 (2001). *Sandy Point Dental, P.C.*, 20 F.4th at 331. In examining *Travelers*, the court found that the Illinois Supreme Court "addressed similar language, holding that 'the term "physical injury" unambiguously connotes *** an alteration in appearance, shape, color or in other material dimension.' " *Id.* (quoting *Travelers Insurance Co.*, 197 Ill. 2d at 312). The *Sandy Point Dental, P.C.* court also noted that "[w]hen interpreting 'direct physical loss' in other cases involving coverage disputes over COVID-19-related losses, many courts have turned to this language from *Travelers* and concluded that the phrase 'direct physical loss,' like the language in *Travelers*, requires a physical alteration to property." See *id.* (citing, *e.g.*, *Paradigm Care & Enrichment Center, LLC v. West Bend Mutual Insurance Co.*, 529 F. Supp. 3d 927, 935 (E.D. Wis. 2021)).

¶ 19    In *Travelers*, our supreme court explicitly concluded that "the phrase 'physical injury' does not include intangible damage to property, such as economic loss." *Travelers Insurance Co.*, 197 Ill. 2d at 312. Applying the holding of *Travelers* to the policy language at issue here, we interpret

"direct physical loss" as requiring a physical alteration to property, which is the plain, ordinary, and popular meaning given to that phrase by the average, ordinary, normal, reasonable person. See *id.*; *Sproull*, 2021 IL 126446, ¶ 19. Evanston Grill argues that *Travelers* is not directly on point because the relevant policy language there implicated an interpretation of "physical injury"[3] and not "physical loss," but we find any such distinction irrelevant.

¶ 20        Like many of the courts that have addressed the coverage issue presented here, we conclude that Evanston Grill's business interruption claim resulting from the COVID-19 closure orders constituted an economic loss and not a "*physical* loss" to covered property needed to trigger coverage under the policy. *Bradley Hotel Corp. v. Aspen Specialty Insurance Co.*, 19 F.4th 1002, 1007-08 (7th Cir. 2021); *Mudpie, Inc. v. Travelers Casualty Insurance Co.*, 15 F.4th 885, 892 (9th Cir. 2021); *Santo's Italian Café LLC v. Acuity Insurance Co.*, 15 F.4th 398, 401 (6th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Insurance Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021). Therefore, the circuit court properly dismissed Evanston Grill's declaratory judgment count. Although Evanston Grill argues that section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) was not the proper procedural mechanism to dismiss that count, we find otherwise because it is clearly apparent that no set of facts can be proved that would entitle it to relief, *i.e.*, an alteration in appearance, shape, color or in other material dimension to covered property. See *Travelers Insurance Co.*, 197 Ill. 2d at 312.

¶ 21        Moreover, Evanston Grill's declaratory judgment action was also properly dismissed under the virus exclusion. Evanston Grill's argument that "the Virus Exclusion unambiguously does not apply because [its] losses arise from the Orders—not a virus" is unavailing.

_____

[3]The insurance policy in *Travelers* defined " 'property damage' " as " 'physical injury to *** tangible property which occurs during the policy period.' " (Emphasis omitted.) *Travelers Insurance Co.*, 197 Ill. 2d at 298.

¶ 22    The virus exclusion's plain and ordinary language excludes "any coverage for any loss" from a "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease." "There is no dispute that the coronavirus at the heart of the COVID-19 pandemic can induce physical distress, illness, and disease." *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 320 (7th Cir. 2021). Therefore, the virus exclusion provides an additional ground to find that the declaratory judgment count was properly dismissed. See *id.* at 320-21 (rejecting similar arguments raised by the insured regarding the virus exclusion, finding that "the novel coronavirus causing the COVID-19 pandemic led directly to the issuance of the government orders, which the complaint alleges as the cause of the losses and expenses"); *Bradley Hotel Corp.*, 19 F.4th at 1007 (rejecting the argument that the closure orders and the coronavirus were two distinct causes of loss); *Goodwill Industries of Central Oklahoma, Inc. v. Philadelphia Indemnity Insurance Co.*, 21 F.4th 704, 714 (10th Cir. 2021) (rejecting the insured's argument that a similarly worded virus exclusion was limited to instances where the virus was physically present at or on the property); see also *Colagrossi*, 2016 IL App (1st) 142216, ¶ 57 (stating that we may consider federal decisions as persuasive authority). Because we find that Evanston Grill's claim falls within the virus exclusion, we need not determine whether any other exclusions applied or State Farm's independent alternative grounds for affirming the dismissal.

¶ 23    Based on our conclusion that coverage was not triggered under the policy relating to Evanston Grill's economic loss of business income and not any "direct physical loss" to covered property, there can be no breach of the insurance contract premised on the allegation that State Farm improperly failed to provide coverage. See *Joseph T. Ryerson & Son, Inc. v. Travelers Indemnity Co. of America*, 2020 IL App (1st) 182491, ¶ 47 (affirming dismissal of the breach of contract count where no duty to defend existed under the insurance policy). Likewise, Evanston

Grill's bad faith denial of coverage count was properly dismissed because "no coverage [was] owed under the policy." *Id.* ¶ 48.

¶ 24                                    III. CONCLUSION

¶ 25        The circuit court properly dismissed Evanston Grill's complaint because its business interruption claim did not qualify as a "covered cause of loss," given that there was no "direct physical loss" of covered property and the economic loss was subject to the policy's virus exclusion.

¶ 26        Affirmed.

---

**No. 1-21-0105**

---

| | |
|---|---|
| **Cite as:** | *Lee v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210105 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-04589; the Hon. Allen Price Walker, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Alexander N. Loftus and David Eisenberg, of Loftus & Eisenberg, Ltd., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Bradley J. Andreozzi and Sulema Medrano Novak, of Faegre Drinker Biddle & Reath LLP, of Chicago, for appellee. |

---

| | |
|---|---|
| *Amicus Curiae***:** | Matthew Thomas Dattilo, of Simpson Dattilo, LLC, of Chicago, for *amici curiae* Restaurant Law Center *et al.* |
| | Michael R. Enright, of Robinson & Cole LLP, of Hartford, Connecticut, for *amici curiae* American Property Casualty Insurance Association *et al.* |

---